Today I'd like to focus on the heart of our argument, which is that the District Court misconstrued the term intended loss, as it's used in the sentencing guidelines, and failed to make any findings in the decision re-loss amount that showed that the Court did in fact properly construe that term using the subjective standard that's required under the case law. Now an additional 14 points were added to the Becker's offense levels based on the Court's conclusion that there was an intended loss in the amount of $850,000, and this enhancement essentially doubled the offense levels that were used to calculate their guidelines ranges. Now the guidelines define intended loss. I'll stop you right there. Did you object to the calculation done by Mr. Diedrichson as to how he got to the $850,000? Well, it wasn't Mr. Diedrichson who came to the $850,000 amount. What happened was the government, almost a year and a half after the Beckers were finished with their work in August of 2014, had their own people come in and do testing of the fiber-optic cables in December 2015 and January 2016. Now Diedrichson later analyzed those test results. Didn't they just put it out for bid as to how to correct the deficient work? Right. So Diedrichson analyzed the test results and said, I'm concluding... Is Diedrichson one of their employees? Yes, he is. Well, he's an engineer for the joint base, for the Air Force Base. I'm not following you. Wasn't it Mr. Diedrichson who analyzed this information and came up with the $850,000 amount? Well, he came up with the test result. He analyzed the test results and concluded that eight of the 10 cable sections had to be redone. The government then basically put out a request for information using that analysis and received a bid from a third party who said that they would do the work for $850,000. Let me ask the question in a different form. Do you object to the Diedrichson testimony of including eight out of 10 as the basis for the fix? I think there was definitely conflicting evidence on that issue, but that's for the trial court to assess the credibility. So the answer is no, right? No, we don't object. But for purposes of our argument, the relevant inquiry is not whether there were actually any such deficiencies, but rather the extent to which the Beckers were subjectively aware of the deficiencies identified in that report at the time that they made the bribes. If they were subjectively aware of only a $50,000 bill rather than $850,000 bill and they were wrong and the actual fix would cost $850,000, then the court couldn't consider the $850,000. That's correct, because the intended loss is... Wouldn't the defendant always soft-pedal the amount of cost? Well, I think that that's certainly a credibility determination for the court to make. However, what we're saying in this case is not that the court erred in making that determination, but rather that the decision regarding the loss amount is not... There are no findings on that issue. So the court jumps from saying, you know, the work was deficient and the Beckers intended for the government to accept that work, but I think that... We have to accept that the Beckers thought there were $60,000 worth of a problem and so that was their subjectively intended loss amount as opposed to the district court being able to consider what their intended loss amount was as opposed to something that went out to bid that was for $850,000 and that that doesn't involve credibility and the court had to accept the $60,000. So I think what I'm arguing here is that the court's order itself, when you look at it, doesn't really make clear whether the court properly applied the subjective standard that's required. So the court goes from saying that the work was sorely deficient, the Beckers intended for the government to accept that work. However, I think that the court kind of skipped a step because the court did not find... The Beckers knew that the work would essentially have to be... The job would have to be completely rewired, which is... But they didn't care. Well, the purpose behind this guideline on loss amount is to make sure that there's a loss amount that corresponds with the defendant's level of culpability. So if the defendants truly believed that, you know, we are aware of there are some deficiencies, but we believe that it's because there's faulty testing equipment and we're getting these bogus readings, and if we just came out and retested it, we're confident that it would be okay, which is what was said during these recordings. If that was true, if that was their true understanding, is that these are really minor issues, these are quick fix issues, as the government's witness himself said during that surreptitiously recorded conversation, then it's our position that the court had to base the intended loss amount on that subjective intent. But the problem here is not, look, we understand that there's evidence that could go either way in this case. There's evidence that maybe they were aware that these issues were more comprehensive than they let on during these recorded conversations, but... Okay, so you have the intended loss in there, but the district court concluded that the Beckers intended for the government to accept ADA's deficient work. If the Beckers understood the ways in which the work was deficient, why isn't the objectively determined cost of that deficiency the intended loss? Again, I think that the court saying that the Beckers intended for the government to accept the deficient work, I don't think that that really shows that the court was applying a subjective standard, because again, if the Beckers believed that these were truly not very big issues, that they were having issues with the testing equipment, then that subjective intent is what has to be considered in assessing the loss amount. And I'd like to point the court to a Third Circuit case that's cited in the opening brief diallo, where again, it was a case where it could have gone either way. There was evidence on both sides regarding the defendant's intent. And that case involved credit card fraud, where he was using counterfeit and stolen credit cards, and he had already spent a certain amount on these credit cards. And in calculating the intended loss, the court basically said, well, it's the credit limit that you could have maxed out, and you were continuing to use these cards. But what the Third Circuit said was, you can't base intended loss on a worst-case potential scenario, and that the court has to do a deeper analysis. But from the court's statement in the order on intended loss, the appellate court said that they would be speculating as to what evidence the court had relied on in making that intended loss determination. Do you want to reserve? Yes, reserve. Thank you. Where are your clients in terms of their sentences right now? John Becker, the estimated release date is at the end of next month, and Herschel Becker, the release date is, I believe, April of next year. Thank you. May it please the Court, Counsel Andrea Stewart for the United States. The central issue on appeal here in this public corruption case is whether the Beckers, by their bribes of an Air Force official, intended to pass on the costs of their shoddy work, of their sorely deficient work, as the court found to the government. District Court Judge Gleason answered that in the affirmative. Her finding is to be reviewed for an abuse of discretion. Very helpfully, in Gasca Ruiz, which was issued by this court several months after the appellant's initial brief, the court set out that the standard for applying guideline provisions to the facts of this case is to be reviewed deferentially. What if the judge had imposed $60,000? Would you be in a position to contest that? Could the judge have accepted that? Yes, Your Honor, that's a factual determination. The appellant's argument about specific intent in this case is wrong both legally and factually. The government is never bound to proof of a defendant's intent by what they explicitly admit. The record in this case, as in any case, has lots of factors and indicators showing that the defendant doesn't get to control that. The defendant doesn't get to say, I think that it would cost $1. Correct. And in this case, so, but on the other hand, if the court heard they thought it was $60,000, and then also then you send it out for bid and it's $850,000. If the court on this record had said, well, I think they thought it was $60,000 and I'm going to do that. Could you appeal that? Your Honor, I think that is a fact-specific question that would have to be determined for clear error. And so we could appeal it, but it would be on clear error because that is, it's a factual determination. So you'd be pushing the same rock uphill that they're pushing up right now. Correct, Your Honor. And this is exactly what Gasca-Ruiz was cautioning, that the district court is in the best position to make these kind of findings that depend on the significance of the case-specific details over which the district court has the institutional advantage. So the court sat through three days of testimony and evidence in the trial, and then a lengthy two-day evidentiary hearing prior to sentencing, taking all of this very highly technical information and taking in the comments and statements of the appellants in this case and coming to the conclusion that the Beckers, by their bribes, intended to pass on the cost of their deficient work to the government. And that is what the guidelines require. The guideline requires that the court find the pecuniary harm purposely sought to inflict by the defendant, and that was the finding that Judge Gleeson made in this case. So it is this kind of really fact-intensive inquiry that Judge Gleeson undertook that is best suited for the discretion of the court. And she did not abuse her discretion in making these findings. I think a particular note in the record, the appellant points to a lack of findings and specificity of findings by the district court. Really relevant in the district court's findings at Excerpt of Records 60-63, she notes that her conclusions on these matters relies heavily on information regarding the 1490. And if you review all of the trial transcript and all of the evidentiary transcripts, the 1490 becomes very relevant because of the three required wavelengths that they meet the specifications for in these contracts. That is the one that is going to carry the Air Force into the next 20 years. And that is the one that on a recording, Herschel Becker admits to the Air Force official, we've done the initial testing, we're failing on all projects, and we're just not going to meet the specifications for 1490. And that's across all projects. And that's in Supplemental Excerpt of Record 60 and 118. Herschel Becker says, I know you could get anal about the 1490, and then we've got another three weeks here to test. And then he goes on to say, if you can make it go easy for us, we're never going to fix that 1490. So his second bribe, he's already paid $160,000 to do work that didn't fix the problem. He is now still failing across all projects on the 1490. And now he is bribing to get out of further testing. He's not even bribing to get out of the fix. He's bribing, he says, our initial tests are showing us that we're not going to pass. And I don't want to stay here three more weeks to figure out what the full scope of my problem is. I just want to get out of here. So on these facts, it's clear that Judge Gleason was well-founded in finding that his intent, the Becker's intent in offering these bribes to an Air Force official was to pass on the total costs to the government. What can you direct me to in the record that shows specifically that Judge Gleason considered the Becker's subjective intent? Is it that or what would you, how do we know for sure? Yes. I think her reference in Excerpt of Record 60 where she said that the testimony of the engineer was persuasive as to the extent of the failures of the cable installation job undertaken by defendants, particularly at the 1490 wavelength. When you link that up with the record of what the statements were by Herschel Becker that Judge Gleason took in evidence, that that was the crucial thing that was not going to be fixed. That was the thing that was going to, they could skate by in the short term on the other two wavelengths, but for the long-term future of this project on this base for the next 20 years, this 1490 was not going to pass. And Herschel Becker admitted on a recorded statement, and it was played in evidence at the trial, that he wasn't going to fix it. Now, Judge Gleason specifically said in her findings at Excerpt of Record 60-63 that she was relying and making her findings on all that trial testimony and all on that evidentiary hearing. She incorporated that in her findings. And so the court in Gascar-Ruiz said that as long as the district court has identified the correct provision, in this case 2C1.1 and 2B1.1, and has applied it, they will review deferentially, it doesn't have to be explicit that those terms are used, that the pecuniary harm purposely sought to inflict is the terms in the guideline. There's no necessity for the district court to use those specific terms. But by her finding that the intended, the intention of the Beckers was to cause this loss to the government, she was making that finding at a specificity that was required by Gascar-Ruiz. And I think this is important because unlike in the out-of-circuit fraud cases that the appellant cites, the purpose of this guideline provision, 2C1.1, is that for deterrence purposes, in this kind of public corruption case, that the punishment should be commensurate with the gain sought by the payer or the recipient of the bribe, whichever is greater. And in this case, it was in fact the payer of the bribe that was going to receive the benefits, different than in this court's case in Gillom, where it was actually the recipient of the bribe, who only received $50,000 or $60,000 in bribes, argued that they should only be held for $50,000 or $60,000 worth on their sentencing levels. But in that case, the Ninth Circuit said the benefit to, you can go under either one, whoever is getting the bigger benefit. And in this case, the company that was offering the bribes received the bigger benefit. And that's what the recipient of the bribe should be held to. So even in Gillom, where the defendant didn't actually accrue the benefit, the total benefit that he was sentenced to, he was held accountable for that in sentencing. This case, the defendants were actually accruing the benefit from this bribe, which was to get out of this $850,000 worth of work. Well, if I understand what Judge Gleeson was finding, it was that the government was deprived of the benefit of the bargain. In other words, the value of the work actually provided and the value of the work that was intended. I mean, she says, the defendants intended to cause a loss to the government of an amount that equaled the difference between the value of the work as required under the contract and the value of the work that was actually provided. I mean, that's what I take it. Then the second step is how much, what's the calculation? And then you get into the Third Circuit case and others, which say you can't, you can't, it's inappropriate to use potential loss. So you have this $850,000, you have the $60,000, then you have the actual loss, which is zero. And Your Honor, the distinction there is the case is cited by appellants, the Diallo case, the Middlebrook case, the Manitow case. They're all credit cards, loans, convenience checks. There's no indication in the record of any of those cases that there was any effort by those defendants to take advantage of the full credit limit, shall we say, in any of those cases. Here the defendants very squarely wanted to take advantage of, they didn't want to know the scope of the problem. They didn't want the government to know the scope of the problem. They wanted to get out of town before they even had to do any further testing to figure out what the scope of the problem was. And under 2C1.1, this is exactly what the bribery guideline is trying to get at, is that they're held accountable for that whole, the whole scope of the cost that they're trying to get out of, so that their punishment is commensurate with the benefit that they are in fact receiving. Okay. Thank you. Thank you. First, I'd like to address the harmless error argument. So the government's position is that the court could either use the loss amount or the value of the benefit to be received from the bribe. It's our position that the benefit to be received would not be the same as the loss amount in this case, because if ADA had redone the work itself, then that could have been done for less than a third party who is bidding that work and expecting to make some kind of profit on the job. The next point I'd like to discuss is the government's statement that we've basically taken the position that the defendant has to admit that he intended to inflict, that he knew that the work was so deficient that the whole job had to be redone. That's not our position. Our position is that there was evidence either way, but the court's order is silent on this issue, so we weren't sure whether the court made that finding and applied that subjective standard. The court did make the finding at ER 60 line 2, defendants intended by their bribery to cause the government to accept that deficient work, regardless what the cost would be. Well, so the court did say that they intended for the... They wanted to pay the bribe and get out of town, as counsel said. But again, if their subjective understanding was that these deficiencies were not actually as extensive as the government later stated... They were willing to let the government take that risk. Right. But I think what's missing from the order is a finding that, you know, we understand that the defendants have taken the position that these were minor issues, but we don't find that to be credible. If there had been those findings in the order, I think this would be a different case. Lastly, the standard of review, we believe, is de novo because we're really arguing that there's been, in identifying the correct legal standard, which includes properly construing the guidelines provision, that is the de novo standard applies to that. Thank you. I see that I'm out of time. Thank you. We ask that the court vacate and remand for resentencing. Thank you both for your presentations. The case just argued will be submitted for decision.
judges: Thomas, Callahan, Bea